## (May 3, 1979)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAWRENCE BROWN, Appellant.—Judgment, Supreme Court, New York County, rendered May 19, 1977, convicting defendant, on jury verdict, of manslaughter in the first degree (Penal Law, § 125.20), and sentencing him to an indeterminate term of imprisonment of 8 to 24 years, is modified, as a matter of discretion in the interest of justice, to the extent of reducing the sentence to an indeterminate term of imprisonment of which the minimum shall be six years and the maximum shall be 18 years, and the judgment is otherwise affirmed. Defendant was convicted of manslaughter in the first degree arising out of a fight in which he stabbed to death the other participant who the jury could find was essentially unarmed. The indictment being for murder in the second degree, the defendant during the trial offered to plead guilty to the crime of manslaughter in the first degree with a sentence whose maximum would not exceed 10 years and whose minimum would be three and one-third or five years, depending upon whether defendant was a predicate felon. The court promised quite clearly that that was the sentence it would impose. However, when in the course of the allocution defendant gave a version of the incident which indicated that he might have a viable defense of self-defense, the court refused to accept the plea; the case proceeded to verdict; the jury convicted defendant of manslaughter in the first degree; the court sentenced the defendant to an indeterminate term of imprisonment of 8 to 24 years. We think that on the facts of this case, the disparity between the sentence the court promised on the plea and that which the court ultimately imposed was so great as to raise a serious

question at least as to the appearance that the defendant may have been punished for exercising his right to have a jury decide whether he had a defense of self-defense, especially as it was really the court and the District Attorney who refused to permit the defendant to plead in view of defendant's statement as to what happened. We are well aware that plea bargains, as the term implies, commonly involve a plea and sentence less than what would be imposed after a jury verdict. There is therefore nothing questionable about the fact that a sentence imposed after verdict of guilty is more than that which would have been imposed after plea negotiations had resulted in a plea to a lesser crime, or even to the same crime. As the bargained plea is customarily a plea whose consequence will be less than what the parties expect would be a proper sentence absent the plea, it is not surprising that the sentence imposed absent the plea is greater than the sentence expected on the plea. But the sentence imposed, absent the plea, must still be a sentence which is just and proper in relation to the facts of the particular case and does not penalize defendant (beyond the loss of his plea bargain) for going to verdict. In the present case, the proposed plea bargain and the court's promise both took place after the prosecution's chief witness had testified; and after there had been evidence that defendant had tried to induce that witness to testify that the killing took place in self-defense, that defendant and not the prosecution knew where two missing witnesses were, and that defendant had said to the witness who testified that those two witnesses would not appear. Thus the court at the time it made its conditional promise of sentence of a plea bargain knew just about as much about the case as it knew at the time of the ultimate sentence. Further, the jury verdict of guilty was not for any greater crime than the defendant's bargained plea would have involved, i.e., manslaughter in the first degree. Defendant's previous criminal record appears to have been largely nonviolent drug related crimes. In these circumstances, the difference between the sentence the court had conditionally promised, 3⅓ to 10 years, and that ultimately imposed, 8 to 24 years, is so great as to perhaps create the appearance that the defendant was being punished for proceeding to verdict, rather than receiving merely the sentence which his crime and record justified. To correct that appearance, while at the same time not unduly depreciating the gravity of the crime and of society's condemnation of this crime, we reduce the sentence to an indeterminate sentence of 6 to 18 years imprisonment. We have considered defendant's remaining contentions and deem them to be without merit. Concur—Murphy, P. J., Sullivan, Markewich and Silverman, JJ.

Lupiano, J., dissents in part in a memorandum, as follows: I would affirm the judgment convicting defendant, after a jury trial, of manslaughter in the first degree and sentencing him to 8 to 24 years imprisonment. The majority choose to substitute their discretion for that of the sentencing court by reducing the sentence to 6 to 18 years. This is done despite the fact that the record does not disclose an abuse of discretion by the sentencing court. During the course of trial, the prosecutor approached defense counsel with a plea offer that would allow the defendant to plead guilty to one count less than the top count of the indictment, that one count less being manslaughter in the first degree. The sentence agreed upon by the attorneys was a top of 10 years, and the minimum would be either three and one-third years if the defendant was not a predicate felon, or, if he was a predicate felon, the minimum would be five years. Defendant's counsel then formally before the trial court made an application to withdraw the plea of not guilty, and the court granted the motion and proceeded to take a plea

allocution. Defendant, however, in entering his guilty plea and in response to interrogation by the court, maintained that he acted in self-defense. Faced with this assertion, the court, with the acquiescence of defense counsel, appropriately refused to take the guilty plea and directed the trial to continue. At the end of the trial, defendant was found guilty by the jury. Perusal of the sentencing minutes discloses that the prosecutor pressed for the maximum sentence, pointing out that defendant had committed an atrocious crime and had tried to subvert the ends of justice. To this end, the prosecutor intimated that the defendant was responsible for the flight of two witnesses so that they would not be available to testify against the defendant, and that defendant was responsible for pressuring the remaining key witness, Geraldine, into recanting her testimony after the jury had returned its guilty verdict. Defense counsel then proceeded to make an impassioned plea on behalf of his client, and both prosecutor and defense counsel made passing references to the prior unsuccessful plea bargain. After they finished their presentation, the court stated as follows: "All right. Well, first of all I think the record should indicate that I have no recollection right now as to what the promises were or what the negotiated plea was when the plea was offered to him, at that time, so I really haven't even taken that into consideration with respect to my sentence. Second of all, I think that we have all got to realize that life has been taken here. It's a very, very serious—it's *the most serious crime* that you can be convicted of—*to take another person's life.* I think you have to understand that, Mr. Brown. I think also to be perfectly frank and honest with you I agree with the jury's verdict. I think you were guilty. I think you were guilty of at least manslaughter in the first degree and that's my opinion. I think under all of the circumstances here that I have to set a sentence that will act I hope as a deterrent. Whether with—it will be a rehabilitative sentence I don't know. That's going to be entirely up to you. When you get to prison, but I think under the circumstances, I think the people of the City of New York, as well as the State of New York, have an absolute right to walk down the streets without fear of being accosted and if they are accosted that they then be not assaulted with any weapons. I think the *use of a knife in this case was* just in my opinion horrible, *absolutely horrible.* We will—*all things being considered* and considering the case as a whole, I am going to set a minimum of eight years and a maximum of twenty-four and that's all" (emphasis supplied). Thus, there is no showing that the court sentenced defendant out of pique or because it was upset at the frustrated plea negotiation during the middle of trial. The court exercised its discretion and viewed this as a particularly heinous crime. While the sensibilities of the majority here may be different regarding this crime in all its aspects, that in and of itself may not serve as justification for holding that the trial court abused its discretion in thus sentencing the defendant. The wisdom of this court, expressed in *People v Junco* (43 AD2d 266, 268, affd 35 NY2d 419, cert den 421 US 951), is no less applicable today than when it was uttered, to wit: "a determination as to what constitutes an appropriate sentence is a matter resting within the sound discretion of the trial court and the sentence imposed by that court should not be reduced on appeal *unless there was a clear abuse of discretion* (see *People v. Dittmar,* 41 A D 2d 788; *People v. Caputo,* 13 A D 2d 861). And within its discretion the trial court may 'vary the sentences of [a] defendant and his codefendant depending on the differing circumstances involved' *(People v. Turley,* 38 A D 2d 769). Such rules are a recognition of the fact that *a trial court is in the most advantageous position* to determine the proper sentence, *having observed*

*the defendant* and being *intimately familiar* with the facts and circumstances underlying the conviction (see Appellate Review of Sentences, Hon. LEO BREWSTER, 40 F. R. D. 79)" (emphasis supplied). The temptation to the members of an appellate tribunal to substitute their individual views and predilections for the Trial Justice in the sentencing of defendants convicted of criminal acts is great, and thus the salutary rule was fashioned that only a clear abuse of discretion by the sentencing court may serve as justification for the exercise of such discretion by the appellate court. Of course, the appellate court must be sensitive to the possible existence of abuses of discretion by sentencing courts, but it must be just as sensitive to a possible abuse of its own discretion in substituting its view of an appropriate sentence for that of the trial court where no clear abuse of discretion on the part of the latter exists. The majority fashion as predicate justifying their exercise of discretion, the possibility that the disparity between the sentence promised on the plea bargain, which subsequently failed of accomplishment due to defendant's conduct, and the sentence which the court ultimately imposed, is such as to "perhaps create the appearance that the defendant was being punished for proceeding to verdict" on his "defense of self-defense." The record herein belies the existence of such issue. In effect, the majority opine that the sentence herein is not just and proper in relation to the facts of this case. To assuage any attempt at criticism based upon a depreciation of the crime and of society's condemnation, the claim is made that the lessening of the merited penal sanction corrects a possible appearance of injustice. Apart from the implicit adverse reflection on the sentencing court contained in the postulation of this claim, it is sufficient to reiterate that it has no support in the record and serves merely to afford a basis for an otherwise unwarranted exercise of discretion.