■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRYL RAMSEY, Appellant.—Judgment of the Supreme Court, Bronx County (Joseph Mazur, J.), rendered January 3, 1990, convicting defendant, after jury trial, of criminal sale of a controlled substance in the third degree (Penal Law § 220.39) and criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), and sentencing him, as a second felony offender, to concurrent, indeterminate terms of imprisonment of from 7 to 14 years and from 2 to 4 years, respectively, affirmed. Rubin, J., and Sullivan, J. P., concur in a memorandum by Rubin, J.; Kupferman, J., concurs in a separate memorandum; and Carro and Rosenberger, JJ., dissent in part in a memorandum by Carro, J., all as follows:

Rubin, J. (concurring). At 7:00 P.M. on August 8, 1989, an undercover officer purchased two vials of crack from defendant for $10. The transaction took place at the intersection of Morris Avenue and 167th Street. The crack was packaged in two vials with black tops. The exchange was witnessed by a second officer, who testified that he watched defendant enter and then emerge from a nearby building.

Defendant's claim that Supreme Court's comprehensive "no inference" charge infringed on his right to remain silent is unpreserved for our review *(People v Autry,* 75 NY2d 836). Defendant requested such a charge, and raised no objection to the instruction delivered by the court *(People v Whalen,* 59 NY2d 273). Were we to review defendant's contention in the interest of justice, we would find no error. The charge contained no language suggesting that defendant's decision not to testify was a tactical maneuver *(People v Wright,* 174 AD2d 522), and the court did not unnecessarily draw attention to defendant's exercise of this right *(People v Garcia,* 160 AD2d 354).

Likewise unpreserved for our review is defendant's claim that he was prejudiced by the court's extensive instruction that it had no opinion regarding the counts contained in the indictment. Were we to consider this claim in the interest of justice, we would find it to be without merit. The court's statements that it entertained no opinion and that the decision to submit the lesser included offense to the jury was merely a legal matter were entirely correct. Supreme Court's instruction did not suggest that the jurors ignore any element of the defense *(People v Rodriguez,* 141 AD2d 382).

As to the sentence imposed, we note that sentencing is a matter committed to the sound discretion of the court *(People v Farrar,* 52 NY2d 302, 305) and, unless the exercise of that discretion is clearly abused, the sentence imposed by the Trial Justice will not be disturbed on appeal *(People v Junco,* 43 AD2d 266, 268, *affd* 35 NY2d 419, *cert denied* 421 US 951). We perceive no abuse of discretion and note that the sentence imposed is within statutory guidelines applicable to a predicate felon. We are in agreement with the sentiment that "if the statute is capable of producing harsh results, the Court's role is limited to calling the matter to the Legislature's attention; it may not assume the legislative role and rewrite the statute to satisfy its own sense of justice *(Pajak v Pajak,* 56 NY2d 394, 397-398). This is a principle of ancient lineage

which this Court has consistently applied in all types of cases *(see generally,* McKinney's Cons Laws of NY, Book 1, Statutes § 73, and cases cited)" *(People v Dozier,* 78 NY2d 242, 254 [Wachtler, Ch. J., dissenting]).

Kupferman, J. (concurring). Our colleague Justice Carro would exercise compassion and reduce the sentence of this defendant.

I agree with him that in a proper case such discretion should be exercised. However, here we have a career criminal who, although the specific charge is only for two vials of crack, was obviously engaged in much larger selling.

When he was caught, he shouted that his vials had blue tops and not black tops. While a trademark deserves protection *(see,* Kupferman, *Aesop in the Courts,* NYLJ, Apr. 3, 1985, at 2, col 3), it does not reach the level of sentence reduction.

Carro, J. (dissenting in part). I believe the sentence of 7 to 14 years imprisonment imposed on the defendant for selling two vials of crack for $10 to an undercover police officer is unduly severe, and should be reduced to a term of 5 to 10 years pursuant to CPL 470.15 (2) (c), essentially for the reasons stated in my dissenting memorandum in *People v Delgado* (178 AD2d 275 [decided herewith]).

By virtue of defendant's having been convicted of a prior felony in 1986 (criminal possession of a weapon in the third degree), the Penal Law provides that the minimum sentence the court could have imposed was 4½ to 9 years (Penal Law § 70.06 [3] [b]; [4] [b]). Aside from the prior felony, the defendant's record consists of one conviction of petit larceny, for which he received a 90-day sentence, and one conviction of criminal possession of a controlled substance in the seventh degree, for which he received a 30-day sentence. These two minor convictions do not in my view warrant a sentence more than 50% higher than the statutory minimum.

As I pointed out in my dissent in *People v Delgado (supra),* the seriousness of a sale of narcotic drugs is directly correlated to the amount of drugs sold. Criminal sale of a controlled substance in the third degree encompasses the sale of anywhere between a fraction of a grain and 218.75 grains of a substance containing a narcotic drug. The two vials of crack sold by this defendant weighed a total of 2.6 grains, approximately 1% of the largest amount cognizable as a third degree sale. Surely that factor cannot justify a sentence more than 50% higher than the statutory minimum of 4½ to 9 years imprisonment.

I find puzzling the majority's reliance upon Chief Judge Wachtler's observation, dissenting in *People v Dozier* (78 NY2d 242, 254), that if a statute is capable of producing harsh results a court "may not assume the legislative role and rewrite the statute to satisfy its own sense of justice". I am not advocating the rewriting of any statute, but rather the judicious exercise of a statutory power unequivocally given to this court to modify sentences that are "unduly harsh or severe" (CPL 470.15 [2] [c].) The majority's statement that the sentence imposed "is within statutory guidelines" means only that the sentence is not illegal as a matter of law, and disregards our statutory power to modify "[a]s a matter of discretion in the interest of justice" (CPL 470.15 [3] [c]) otherwise legal sentences that are "unduly harsh or severe" (CPL 470.15 [2] [c]).

With respect to the deterrent effect of the sentence imposed, it cannot seriously be argued that the sentence of 7 to 14 years imposed by the trial court would have a deterrent effect in the community measurably greater than a 5 to 10 year sentence, which this court has held more closely reflects appropriate punishment, deterrence and societal protection in virtually identical factual contexts. *(See, People v Acosta,* 157 AD2d 485, *lv denied* 75 NY2d 916; *People v Depass,* 168 AD2d 230, *lv denied* 77 NY2d 876; *People v Cowell,* 170 AD2d 343, *lv denied* 77 NY2d 993).

I note that the majority does not undertake to distinguish the three recent cases I cite as precedents *(People v Acosta, supra; People v Depass, supra; People v Cowell, supra)* wherein this court unanimously modified sentences of predicate felons convicted of selling minor amounts of crack, to 5 to 10 years. Instead, the majority relies upon *People v Junco* (43 AD2d 266, *affd* 35 NY2d 419, *cert denied* 421 US 951), an old 3 to 2 decision finding no clear abuse of discretion in the sentence imposed on defendant therein for selling, for $54,000, 2 kilos of opium base, one eighth of a kilo of heroin and one half of a kilo of cocaine, more than 15,000 times the amount sold by Ramsey. It is of more than passing interest that Junco's codefendant, Anthony Ruggiero, fired a shotgun at police officers as they sought to apprehend him and Junco during an automobile chase. Ruggiero pleaded guilty to criminal sale of drugs as a class B felony (the same as in the instant case), and was sentenced to one to 15 years, a sentence in effect considerably *less* than that received by the defendant herein when focusing on its most important aspect, the minimum that the defendant must serve before becoming eligible for parole.

The defendant is described in his pre-sentence probation report as an immature individual of dull-average intelligence, who comes from a broken home. Clearly he is not a profiteer in the drug trade who chose to sell penny ante quantities of drugs in open view on the street, with all of its attendant dangers, instead of finding gainful employment. Of course, that choice always exists, at least in theory. The reality, however, is that in too many of our communities, jobs are simply not available. As a consequence, homelessness, hopelessness and poverty rend the fabric of our society, and drive many of the lesser situated of our people to drugs, especially heroin and cocaine, to create the temporary illusion that there is more to their lives than despair, and to make the constant pain go away, even if only for a matter of minutes. It is common knowledge that most male, inner-city users of narcotic drugs ultimately become low-level street dealers in order to support their addiction.

There are those among us who may believe that one solution to the problem of illicit drug use and sale lies in warehousing offenders in our prisons for extended periods of time. I am not one of them, especially as concerns the lowest level of street dealers such as the defendant *(see,* Appendix). The sentence should fit the crime, and the offender, giving due consideration also to the protection of society and a reasonably calculated deterrence factor *(see, People v Farrar,* 52 NY2d 302, 305). After weighing these considerations, I believe that the sentence imposed in this case was disproportional and excessive, and I would accordingly modify it to a term of 5 to 10 years imprisonment.

## Appendix

Reproduced below are several brief comments, by experts, excerpted from newspaper articles pertinent to the sentencing issue raised in this appeal.

1. Charles Hynes, Brooklyn District Attorney:

" 'If we can adopt [in a law-related educational program] every elementary school in this county, we can really begin to turn around the things that have caused us so much grief as a society,' Hynes said. Drugs accounted for 15 percent of all crimes in 1975 compared with an estimated 75 percent to 80 percent today, he said.

" 'Our priorities are upside down. It takes $125,000 [currently $180,000] to build a cell and costs between $24,000 and

$45,000 [per year] to house an inmate,' Hynes said, adding that education is the key cost-effective deterrent to crime." (Newsday, Feb. 17, 1991 [Brooklyn ed].)

2. Robert Gangi, Executive Director of the Correctional Association of New York:

" 'Since 1983 * * * the state's prison population has increased from 28,500 to over 55,000. In the last fiscal year alone, New York allocated more than $3 billion for prison operating and construction costs. That's about $8 million a day. Meanwhile, crime has increased—along with the size of the state debt.

" '[Governor] Cuomo now wants to amend the 1973 Second Felony Offender Law, which requires prison sentences for all repeat felons regardless of the circumstances of their crimes. The principal effect of this statute has been the mandatory imprisonment of thousands of low-level, nonviolent drug dealers and users. Last year alone, 6,430 nonviolent offenders were imprisoned under this statute, costing $192 million.

" 'Locking up these people doesn't work because usually they are replaced on the street by other sellers and other buyers before the police can even process their papers. Moreover, prisons become overcrowded and do not have enough programs to occupy inmates productively. Tension levels rise, creating a dangerous environment for inmates and staff alike.

"The governor's proposed reform would return discretion in sentencing to judges. They could utilize alternative punishments for minor offenders who take up increasing amounts of valuable prison space. The most appropriate penalty for many of them is intensive-supervision probation, which includes day reporting, community service, job training and mandatory participation in proven drug treatment programs' " (Newsday, May 8, 1991 [City ed]).

3. Daniel L. Feldman, Chair of the New York State Assembly Committee on Correction:

" 'My bill allows judges to sentence low-level, nonviolent second felony offenders to residential drug treatment facilities if they don't have prior violent felony convictions and were not involved in major drug dealing. [Chief Administrator of the Office of Court Administration Matthew] Crosson's analysis indicates it could save New York the cost of housing 3,000 inmates per year—up to $30,000 each—and still ensure public safety * * * Incarcerating street dealers in need of treatment takes up prison space that should be used for the major

distributors of drugs and the violent, hardened criminals who present the greatest danger to the public.' " (Newsday, May 17, 1991 [City ed].)

" 'The Political reality is that resources are scarce,' Feldman said. 'Is this where we want to use our resources—on the addicts selling to support their habits—or should we be focusing on that person who sticks a knife in you, who breaks into your house, or who is making money running the drug trade?' " (Newsday, Oct. 8, 1990 [Nassau and Suffolk ed].)

4. Thomas Coughlin III, New York State Correction Commissioner: " 'We have taken a criminal justice policy for the 1970's and haven't adjusted for the 1990's * * * You've got a bunch of drug addicts being arrested in New York City for possession and sale and they're being sent to prison under mandatory statutes,' Coughlin said. 'I don't think it's appropriate.' " *(Ibid.)*

5. Governor Mario Cuomo: " 'At some point,' Cuomo said in a recent interview, 'society will become so weighed down with the oppressive expense of jails * * * that people will decide it makes more sense to save some of that money for education and crime prevention instead of attempting rehabilitation through punishment—and that it would be better to have some prisoners who are not much of a threat on the street in alternative and cheaper forms of punishment than a prison cell.' " *(Ibid.)*