■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ESTEBAN DELGADO, Appellant.—Judgment of the Supreme Court, Bronx County (Fred Eggert, J., at jury trial and sentence), rendered February 21, 1990, convicting defendant of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to an indeterminate term of imprisonment of from 7½ to 15 years, affirmed. Sullivan, J. P., and Rubin, J., concur in a memorandum by Rubin, J.; Kupferman, J., concurs in the result only; and Carro and Rosenberger, JJ., dissent in part in a memorandum by Carro, J., all as follows:

Rubin, J. (concurring.) On the afternoon of July 26, 1989, an undercover officer encountered defendant on Boynton Avenue in Bronx County, calling out, "Nickels. Nickels." The officer asked defendant for two "nickels" and was told that defendant's "boy" (Louis Rivera) had gone to get more drugs. Rivera returned shortly and, at defendant's direction, gave the officer two vials of

crack cocaine in exchange for two $5 bills. After the sale, Rivera headed into a nearby building, and defendant remained on the street. The undercover officer radioed detailed descriptions of defendant and Rivera to his backup team and, within minutes, the pair were arrested. The undercover officer made an immediate drive-by identification. No buy money or additional drugs were recovered from defendant.

In failing to make a timely objection, defendant has failed to preserve for appellate review his claim that the testimony of the arresting officer was bolstered by a reference to the drive-by identification by the undercover officer (CPL 470.05; *People v Whalen,* 59 NY2d 273). In any event, there is no question regarding identification under the circumstances, given the face-to-face sale, detailed descriptions and drive-by confirmatory identification. Thus, any bolstering of the arresting officer's testimony was harmless because there is no significant probability that defendant would have been acquitted had it not been for the duplicative testimony *(see, People v Johnson,* 57 NY2d 969).

As to the sentence imposed, we note that sentencing is a matter committed to the sound discretion of the court *(People v Farrar,* 52 NY2d 302, 305) and, unless the exercise of that discretion is clearly abused, the sentence imposed by the Trial Justice will not be disturbed on appeal *(People v Junco,* 43 AD2d 266, 268, *affd* 35 NY2d 419, *cert denied* 421 US 951). We perceive no abuse of discretion and note that the sentence imposed is within statutory guidelines applicable to a predicate felon. We are in agreement with the sentiment that "if the statute is capable of producing harsh results, the Court's role is limited to calling the matter to the Legislature's attention; it may not assume the legislative role and rewrite the statute to satisfy its own sense of justice *(Pajak v Pajak,* 56 NY2d 394, 397-398). This is a principle of ancient lineage which this Court has consistently applied in all types of cases *(see generally,* McKinney's Cons Laws of NY, Book 1, Statutes § 73, and cases cited)" *(People v Dozier,* 78 NY2d 242, 254 [Wachtler, Ch. J., dissenting]).

Carro, J. (dissenting in part). I believe that the sentence of 7½ to 15 years imposed on the defendant for selling two vials of crack for $10 to an undercover police officer is unduly harsh or severe, and should be reduced to 5½ to 11 years pursuant to CPL 470.15 (2) (c). Defendant's codefendant on the indictment, Louis Rivera, who handled the drugs and money in the transaction, elected to plead guilty to attempted criminal sale

of a controlled substance in the third degree, and was sentenced to one year.

While we are not informed as to Rivera's prior record, and the defendant was previously convicted of the felonies of robbery and selling drugs, that alone does not in my view justify a sentence over seven times greater than that imposed on Rivera, and raises the unsettling possibility that the defendant was punished with an unduly harsh sentence merely because he exercised his constitutional right to a trial.

My conclusion that the sentence imposed was unduly harsh or severe is supported by several cases recently decided by this court, involving facts essentially indistinguishable from those presented herein. In *People v Acosta* (157 AD2d 485, *lv denied* 75 NY2d 916), the defendant was sentenced to 12½ to 25 years for criminal sale of a controlled substance in the third degree. We found that sentence for a single $10 drug sale excessive, and reduced it to 5 to 10 years, noting that the codefendant in that case was sentenced to a term of 2 to 4 years for conduct hardly different from that of the appellant therein. In *People v Depass* (168 AD2d 230, *lv denied* 77 NY2d 876), we reduced to a term of 5 to 10 years, a sentence of 8½ to 17 years for a single $20 sale of crack. In *People v Cowell* (170 AD2d 343, *lv denied* 77 NY2d 993), we reduced to a term of 5 to 10 years, a sentence of 8 to 16 years for selling two vials of crack, even though the defendant had a record of 22 convictions, including three felonies.

I note that the majority does not undertake to distinguish the three recent cases I cite as precedents *(People v Acosta, supra; People v Depass, supra; People v Cowell, supra)* wherein this court unanimously modified sentences of predicate felons convicted of selling minor amounts of crack, to 5 to 10 years. Instead, the majority relies upon *People v Junco* (43 AD2d 266, *affd* 35 NY2d 419, *cert denied* 421 US 951), an old 3 to 2 decision finding no clear abuse of discretion in the sentence imposed on defendant therein for selling, for $54,000, 2 kilos of opium base, one eighth of a kilo of heroin and one half of a kilo of cocaine, more than 10,000 times the amount sold by Delgado. It is of more than passing interest that Junco's codefendant, Anthony Ruggiero, fired a shotgun at police officers as they sought to apprehend him and Junco during an automobile chase. Ruggiero pleaded guilty to criminal sale of drugs as a class B felony (the same as in the instant case), and was sentenced to one to 15 years, a sentence in effect considerably *less* than that received by the defendant herein when

focusing on its most important aspect, the minimum that the defendant must serve before becoming eligible for parole.

The affirmance by the majority of the defendant's sentence of 7½ to 15 years for a single $10 sale of crack represents a considerable departure from recent sentence modification cases decided by this court, and additionally fails to take into account the gross disparity between the sentence imposed and the far lesser sentence imposed on the codefendant Rivera, who was no less culpable than the defendant. I am left with the disquieting impression that the defendant was punished for exercising his right to a jury trial, and did not receive a sentence appropriate to his crime and record *(see, People v Brown,* 70 AD2d 505, 506).

I find puzzling the majority's reliance upon Chief Judge Wachtler's observation, dissenting in *People v Dozier* (78 NY2d 242, 254), that if a statute is capable of producing harsh results a court "may not assume the legislative role and rewrite the statute to satisfy its own sense of justice". I am not advocating the rewriting of any statute, but rather the judicious exercise of a statutory power unequivocally given to this court to modify sentences that are "unduly harsh or severe" (CPL 470.15 [2] [c]). The majority's statement that the sentence imposed "is within statutory guidelines" means only that the sentence is not illegal as a matter of law, and disregards our statutory power to modify "[a]s a matter of discretion in the interest of justice" (CPL 470.15 [3] [c]) otherwise legal sentences that are "unduly harsh or severe" (CPL 470.15 [2] [c]).

Finally, it should be noted that our Penal Law divides narcotic drug sales into three categories—low-level, mid-level and high-level. Penal Law § 220.39 (1) defines the lowest level, criminal sale of a controlled substance in the third degree, and requires only the sale of a narcotic drug, even in a minuscule amount. Penal Law § 220.41 (1) defines the mid-level sale (second degree), requiring the sale of one-half ounce or more of a narcotic drug. Penal Law § 220.43 (1) defines the highest level (first degree), and requires the sale of two or more ounces of a narcotic drug. Clearly, the seriousness of a sale of narcotic drugs is directly correlated to the amount of the drugs sold.

Criminal sale of a controlled substance in the third degree, the crime that defendant was convicted of, requires the sale of anywhere between a fraction of a grain and 218.75 grains of a

substance containing a narcotic drug (there are 437.5 grains in an ounce). The two vials of crack sold by this defendant weighed a total of 3.8 grains, or 1.9 grains per vial. Thus the defendant could have sold up to 115 similar vials of crack, and he still would have been punished as a lowest level drug seller.

I do not suggest that the sale of two vials of crack is not a serious crime. Clearly it is. But the sentence of 7½ to 15 years imprisonment for the sale of two vials of crack, especially when compared with the one year sentence imposed on the codefendant Rivera arising out of the same sale, is palpably disproportional, and unduly severe, and accordingly warrants reduction to a period of incarceration more in line with the statutory range of crimes and punishments as set forth in our Penal Law, and with fundamental notions of fairness and justice.*

---

* To further illustrate the excessiveness and disproportionality of the 7½ to 15 year sentence imposed on the defendant for selling two vials of crack, that would be the *maximum* sentence that could be imposed on a predicate felon for the most aggravated and shocking acts constituting assault in the first degree, which is defined as follows by Penal Law § 120.10:

"A person is guilty of assault in the first degree when:

"1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or

"2. With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or

"3. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another".

" 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." (Penal Law § 10.00 [10].)